IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **RUSSELL E. MARTIN et al.,** | |
| **Plaintiffs,** | |
| **v.** | **1:07-cv-326-WSD** |
| **CITY OF ATLANTA, GEORGIA and DENNIS L. RUBIN,** | |
| **Defendants.** | |

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Judgment as a Matter of Law.

## I.    BACKGROUND

### A.    Procedural History

This is a civil rights and employment discrimination action brought under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964. Plaintiffs are white men who, at all relevant times, were fire captains in the Atlanta Fire Rescue Department (the "Fire Department" or the "Department"). Defendants are the City of Atlanta and Dennis L. Rubin ("Rubin"). Rubin, at all relevant times, was the white Atlanta Fire Chief. Plaintiffs allege that, in 2004 and 2007, they were denied promotions to the position of battalion chief or section chief

because of their race.[1]  Plaintiffs contend that Rubin, the decision maker in the promotion process, had a goal to achieve racial diversity in the Department and promoted black candidates over Plaintiffs to achieve diversity.

The trial of this matter began on August 19, 2013.  On August 19 and 20, 2013, Plaintiffs put on their case-in-chief.  Eighteen (18) of the Plaintiffs testified.[2]  Ten (10) Plaintiffs did not.[3]

On August 20, 2013, after Plaintiffs concluded their case-in-chief, Defendants moved for judgment as a matter of law, under Rule 50 of the Federal Rules of Civil Procedure, as to the claims of six (6) of the non-testifying Plaintiffs—Gittens, Doyle, Pruett, Pagnota, Shoemaker, and Peal (the "Six Plaintiffs")—on the ground that the record lacked sufficient evidence for the Six Plaintiffs' claims to be submitted to the jury.  Plaintiffs' counsel did not oppose Defendants' motion, Defendants' motion was granted, and judgment was entered

---

[1] The term "appointment" was used interchangeably with the term "promotion." The Court uses the term "promotion" in this order.

[2] The Plaintiffs who testified were: Russell E. Martin, Douglas Hatcher, James Rawls, Michael Rice, Alford Terry, Raymond D. Bearden, Jan Peter Thiel, William Scott Bostwick, Daniel F. O'Neill, Gregory L. Shinkle, Michael Beckman, Kenneth N. Hale, Phillip Yarri, James Robert Dycus, Richard M. Bodane, Mark Wayne Farmer, Dennis Brown, and Roderick Humphreys.

[3] The Plaintiffs who did not testify were: Robert Webber, Gregg W. Ruckstuhl, Danny G. Byess, Scott Whalen, James W. Peal, Jimmy David Gittens, Thomas C. Doyle, Ronald V. Pagnotta, Donald Pruett, and Billy J. Shoemaker.

on the claims asserted by the Six Plaintiffs.

Also after the conclusion of Plaintiffs' case-in-chief, Defendants moved under Rule 50 for judgment as a matter of law on all of the claims asserted by the remaining Plaintiffs on the ground that the evidence is not sufficient to support any of the Plaintiffs' claims. The Court reserved ruling on this motion.

On August 21, 2013, after all of the evidence had been admitted in the case and the evidence was deemed closed, Defendants renewed their motion for judgment as a matter of law on the claims of the remaining Plaintiffs. The Court instructed the parties to submit written briefs on the motion, and on August 22, 2013, the parties filed their submissions. Defendants argue they are entitled to judgment as a matter of law including because the evidence did not show that Rubin acted with discriminatory intent in his promotion decisions.

B.    Facts

In July 2004, Defendant Rubin, after being hired as the Atlanta Fire Chief, instituted a new process for the promotion of captains to the position of battalion chief or section chief. Before the new process, the appointment of battalion chiefs and section chiefs did not require any testing and at most required a person seeking promotion to submit a resume. The Fire Chief alone selected who to promote. Under the new process, captains were required to meet certain minimum service

3

qualifications, and if these were met, they were determined to be eligible to take a standardized exam administered by an outside vendor. Those who passed the exam were then required to submit to an interview by a panel of high-ranking officials from the Atlanta Fire Department and fire departments in other jurisdictions. The panel ranked the interviewed candidates into three groups: "outstanding," "well qualified," and "qualified."[4] The panel's ranked list was available to be used for two years. Rubin made promotional appointments from the panel's ranked list. At the end of two years, the list expired, and the process was followed again to generate a new list of rankings.

1.    *2004 Process*

In October 2004, after the examination was administered and the panel interview process was complete, the panel developed the 2004 promotion list (the "2004 List"). The 2004 List ranked sixteen (16) captains in the "outstanding," or highest, category, including seven (7) white captains and eight (8) black captains.[5] The list ranked twelve (12) captains in the "well qualified," or middle, category,

---

[4] The candidates were not individually ranked within each group.

[5] The record does not show the race of Calvin Matthews, a captain who was rated "outstanding."

including ten (10) white captains and two (2) black captains.  The list ranked sixteen (16) captains in the "qualified," or lowest, category.[6]

Thirteen (13) of the Plaintiffs were on the 2004 List: Bearden, Beckman, Bodane, Bostwick, Brown, Byess, Martin, O'Neill, Shinkle, Terry, Thiel, Whalen, and Yarri (the "2004 Plaintiffs").[7]  Of these, ten (10) were ranked in the lowest, or "qualified," category: Bearden, Beckman, Bodane, Bostwick, Brown, Byess, Terry, Thiel, Whalen, and Yarri.  Three (3) were ranked in the "well qualified" category: Martin, O'Neill, and Shinkle.  None of the Plaintiffs were ranked in the "outstanding" category.

Before publication of the 2004 List, Rubin asked the members of the interview panel to consider changing one captain's ranking.  In response to this request, Cindy Thompson, a white captain, was elevated from either the "qualified" or "well qualified" cateogry to the "outstanding" cateogry.[8]  The panel considered Rubin's request and changed Thompson's category placement.

---

[6] The record does not show the racial makeup of the "qualified" category.  The 2004 List was introduced as Plaintiffs' Exhibit 4.  In his testimony, Rubin identified the captains who were promoted and the race of each promoted captain.

[7] The Court considers only those Plaintiffs whose claims remain pending.

[8] In his testimony, Rubin stated that Thompson was elevated to "outstanding," but Rubin could not remember the lower category in which Thompson originally had been placed.  The record does not show Thompson's original category.

Rubin testified that, in choosing which candidates to promote, he intended to use the ranking categories in the 2004 List.  He testified that he would make appointments exclusively from the "outstanding" category until that category was exhausted.  When it was, he would make appointments from those in the "well qualified" category and would exhaust that category before appointing the captains in the "qualified" category.  Over the next two (2) years, Rubin made promotional appointments from the 2004 List according to this process.  He first promoted captains in the "outstanding" category, including Cindy Thompson.[9]  When all of the "outstanding" captains had been promoted, he began making promotions from the "well qualified" group.  From this group, he promoted six (6) captains, including one (1) black and five (5) white captains.  Rubin did not make any other promotions from the 2004 List because no additional positions became open for promotion.  None of the 2004 Plaintiffs were promoted.

    2.    *2007 Process*

The 2004 List expired in October 2006, and Rubin instituted a process, nearly identical to the process employed in 2004, to generate a new promotion list. In January 2007, the new list was announced (the "2007 List").  The 2007 List

---

[9] Rubin testified that the one captain in the "outstanding" category was not promoted because he was incarcerated.

ranked twelve (12) captains in the "outstanding" category, seventeen (17) captains in the "highly qualified" category,[10] and eleven (11) captains in the "qualified" category.[11]

Eighteen (18) Plaintiffs were included on the 2007 List: Bearden, Beckman, Bostwick, Byess, Dycus, Farmer, Hale, Hatcher, Humphreys, Martin, O'Neill, Rawls, Rice, Ruckstuhl, Shinkle, Terry, Webber, and Whalen (the "2007 Plaintiffs").[12]  Of these, six (6) were ranked in the "qualified" category: Bearden, Martin, Rawls, Ruckstuhl, Webber, and Whalen.  Ten (10) were ranked in the "highly qualified" category: Bostwick, Byess, Dycus, Farmer, Hale, Hatcher, Humphreys, Rice, Shinkle, and Terry.  Two (2) were ranked in the "outstanding" category: Beckman and O'Neill.

Before publication of the 2007 List, Rubin asked the members of the interview panel to consider changing one captain's ranking.  In response to this request, Ronnell Johnson, a black captain, was elevated from either the "qualified"

---

[10] The name of the middle category changed from "well qualified" on the 2004 List to "highly qualified" on the 2007 List.

[11] The record does not show the racial makeup of the categories.  The 2007 List was introduced as Plaintiffs' Exhibit 19.  In his testimony, Rubin identified the captains who were promoted and the race of each promoted captain.

[12] The Court considers only those Plaintiffs whose claims remain pending.

or "highly qualified" category to the "outstanding" category.[13]  Rubin testified that he asked for Johnson to be put in the "outstanding" category in order to promote him to a specific position—a "day work" section chief in charge of managing the Fire Department's property.  Rubin stated that "no one else had expressed an interest or had any seeming desire to be in that role."  The panel agreed to qualify Johnson as "outstanding."

Rubin testified that, as he had done with the 2004 List, he promoted from the 2007 List in order of the rankings.  Specifically, as he had done using the 2004 List, he intended to promote exclusively from the list of captains ranked in the "outstanding" category, and, after that category was exhausted, would then begin making promotions exclusively from the "highly qualified" category, until this category was exhausted.  Over the next three (3) months, Rubin made promotional appointments from the 2007 List.[14]  Rubin promoted seven (7) captains from the "outstanding" group, including three (3) white captains and four (4) black captains.

_____

[13] Rubin stated that Johnson was elevated to "outstanding," but Rubin could not remember the lower category in which Johnson originally had been placed.  The record does not show Johnson's original category.

[14] In April 2007, Rubin left the Atlanta Fire Department to take a new position in Washington, D.C.  Plaintiffs do not challenge any promotional appointments made after Rubin's departure.

After leaving Atlanta for his new position in Washington, Rubin did not make any other promotions from the 2007 List.  None of the 2007 Plaintiffs were promoted.

### 3.   *Evidence of Discriminatory Intent or Motive*

Before trial, Plaintiffs and Defendants entered into a stipulation in which Plaintiffs agreed that the creation of the 2004 and 2007 Lists was not the result of discrimination, and Defendants agreed not to introduce evidence of individualized qualifications of the candidates on the lists.[15]  (See Pls.' Not. Filing [248].) Plaintiffs' position at trial was thus limited to arguing that Rubin acted with discriminatory intent in making promotional appointments from the 2004 and 2007 Lists.

Plaintiffs introduced various evidence that Rubin expressed a desire or goal to achieve or maintain diversity in relation to employment actions.  None of the evidence was direct evidence of his intent in making the promotions from the 2004 and 2007 Lists.  However, as the Court explained in its order on the parties' motions *in limine*, the evidence was determined to be admissible for the purpose of

---

[15] The stipulation included an exception for Cindy Thompson and Ronnell Johnson, the captains who were elevated to the "outstanding" category in their respective lists.  The stipulation allowed Defendants to present individualized reasons for Rubin's selection of Thompson and Johnson for promotion.

evaluating Rubin's intent or motive in making the challenged promotions.  (See

Order [246].)

## II.   DISCUSSION

### A.   Legal Standard

Rule 50(a) of the Federal Rules of Civil Procedure provides:

> If a party has been fully heard on an issue during a jury trial and the
> court finds that a reasonable jury would not have a legally sufficient
> evidentiary basis to find for the party on that issue, the court may:
>> (A) resolve the issue against the party; and
>> (B) grant a motion for judgment as a matter of law against the
>>     party on a claim or defense that, under the controlling law, can
>>     be maintained or defeated only with a favorable finding on that
>>     issue.

Fed. R. Civ. P. 50(a)(1).

To grant a motion under Rule 50, the Court must find "'there is no legally

sufficient evidentiary basis for a reasonable jury to find' for the non-moving

party." Chaney v. City of Orlando, 483 F.3d 1221, 1227 (11th Cir. 2007) (quoting

Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir.

2001)).  In considering a Rule 50 motion, the Court focuses on the sufficiency of

the evidence.  Id.  The Court must "review all of the evidence in the record and

must draw all reasonable inferences in favor of the nonmoving party." Cleveland

v. Home Shopping Network, Inc., 369 F.3d 1189, 1192–93 (11th Cir. 2004).

Credibility determinations, the drawing of inferences, and the weighing of

competing evidence are functions for the jury, not the Court.  Id. at 1193.

B.    Analysis

In a disparate-treatment employment discrimination case, the plaintiff must prove discriminatory intent on the part of the defendant, either by direct or circumstantial evidence.  Denney v. City of Albany, 247 F.3d 1172, 1182 (11th Cir. 2001) (quoting EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000)).[16]  "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption."  Id. (quoting Joe's Stone Crab, 220 F.3d at 1286).  Circumstantial evidence is sufficient if it satisfies the rubric set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Id. at 1182–83 (quoting Joe's Stone Crab, 220 F.3d at 1286).  In the absence of direct evidence or McDonnell Douglas circumstantial evidence, the defendant is entitled to judgment as a matter of law.  E.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148–49 (2000); Denney, 247 F.3d at 1190; Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997).

---

[16] Discriminatory intent is an element in disparate-treatment employment discrimination cases brought under Title VII, § 1981, and § 1983, and the test for discriminatory intent is the same under each cause of action.  See Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1174 n.6 (11th Cir. 2010); Brown v. Am. Honda Motor Co., 939 F.2d 946, 949 (11th Cir. 1991).

In this case, Plaintiffs do not contend that they have introduced any direct evidence of Rubin's discriminatory intent.  To avoid judgment as a matter of law against them, their evidence must satisfy McDonnell Douglas.

Under McDonnell Douglas, the plaintiff's evidence must first establish a prima facie case of discrimination.  In a failure-to-promote case, a plaintiff establishes a prima facie case if he proves that: (i) he is a member of a protected class; (ii) he was qualified for and applied for the promotion; (iii) he was rejected; and (iv) someone who is not a member of the protected class was promoted. Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 768 (11th Cir. 2005).[17]

---

[17] Several panels of the Eleventh Circuit have held that the fourth prong of the prima facie standard requires the plaintiff to prove "that other *equally or less qualified employees* who were not members of the protected class were promoted." Walker v. Mortham, 158 F.3d 1177, 1185 (11th Cir. 1998); see, e.g., Denney, 247 F.3d at 1183 (quoting Combs, 106 F.3d at 1539 n.11).  In Walker, the court noted this divergence among the panels and held that, under the "earliest case" rule, the standard does not require evidence that the promoted employee was "equally or less qualified" than the plaintiff.  158 F.3d at 1188–89 (tracing the non-qualification standard to Crawford v. Western Electric Co., 614 F.2d 1300 (5th Cir.1980), and the qualification standard to Perryman v. Johnson Products Co., 698 F.2d 1138 (11th Cir. 1983)).  Since Walker, panels of the Eleventh Circuit have continued to apply the divergent standards.  Compare Denney, 247 F.3d at 1183 (applying the qualification standard), with Vessels., 408 F.3d at 768 (applying the non-qualification standard).  This Court agrees with Walker that the earliest case, Crawford, controls and that the non-qualification standard applies.  The Court notes, however, that the ultimate result reached here would be the same under either standard.

If the plaintiff establishes a prima facie case, the defendant must introduce evidence showing a legitimate, non-discriminatory reason for the challenged employment action.  <u>Denney</u>, 247 F.3d at 1183.

If such a reason is given, the plaintiff must prove that the stated reason is a pretext for unlawful discrimination.  <u>Id.</u>  To do this, the plaintiff must "produce evidence sufficient to permit a reasonable factfinder to disbelieve [the defendant's] proffered nondiscriminatory explanation."  <u>Combs</u>, 106 F.3d at 1543.  On a motion for judgment as a matter of law, the Court "must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'"  <u>Id.</u> at 1538 (quoting <u>Cooper–Hous. v. S. Ry. Co.</u>, 37 F.3d 603, 605 (11th Cir. 1994)).  "The district court must evaluate whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'"  <u>Id.</u> (quoting <u>Sheridan v. E.I. DuPont de Nemours & Co.</u>, 100 F.3d 1061, 1072 (3d Cir. 1996)).

  1. *2004 Plaintiffs*

The thirteen (13) 2004 Plaintiffs sought, but were not selected for,

promotions from the 2004 List.  Nine (9) black captains on the list were promoted.

Under the standard enunciated in Walker and Crawford, the 2004 Plaintiffs

satisfied their prima facie burden.

Rubin, offering a non-discriminatory reason for not promoting the 2004

Plaintiffs, testified that he promoted strictly using the list categories, beginning

with the top category until it was exhausted and moving to the middle category

only when all of the "outstanding" ranked captains had been promoted.  He did not

reach the "qualified" category of the 2004 List because he did not exhaust the

"well qualified" group.[18]  The evidence shows that all nine (9) of the black

promoted captains were, in fact, from the "outstanding" and "well qualified"

categories, and Plaintiffs have not introduced any evidence to show that Rubin's

testimony about how he planned and made promotions was false or pretextual.[19]

Ten (10) of the 2004 Plaintiffs were ranked in the "qualified," or lowest, category

---

[18] The evidence shows that one captain, Cindy Thompson, was originally ranked at either the "qualified" or "well qualified" level and that Rubin subsequently placed her in the "outstanding" level and promoted her.  Thompson is white, and in the same protected class as Plaintiffs, and her promotion cannot serve as the basis for any Plaintiff's claim.  See, e.g., Revere v. McHugh, 362 F. App'x 993, 997 (11th Cir. 2010) (holding that plaintiff, a black woman, failed to make prima facie case because the promoted comparator was also a black woman).

[19] The Court notes that in the 2004 promotion cycle, four (4) more white captains were promoted over black captains.

on the 2004 List: Bearden, Beckman, Bodane, Bostwick, Brown, Byess, Terry, Thiel, Whalen, and Yarri.  The Court finds that these Plaintiffs have failed to meet their burden to demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Rubin's explanation "that a reasonable factfinder could find [it] unworthy of credence."  Combs, 106 F.3d at 1538 (quoting Sheridan, 100 F.3d at 1072).  Defendants are thus entitled to judgment as a matter of law as to these Plaintiffs' claims.[20]

The remaining three (3) 2004 Plaintiffs—Martin, O'Neill, and Shinkle— were ranked in the "well qualified," or middle, category.  A total of six (6) "well qualified" captains were promoted.  Of these, one (1) was not white.  Plaintiffs do not argue that Defendants failed to present evidence of a legitimate, non-discriminatory reason for Rubin's decision not to promote Martin, O'Neill, and Shinkle, and Defendants do not argue that Plaintiffs failed to present evidence of pretext.[21]  On the evidence presented, a reasonable jury could find that race was a

---

[20] The Court notes that, under the "qualification" prima facie standard applied in Denney, the "qualified" 2004 Plaintiffs have not satisfied their burden to show that "other equally or less qualified employees who were not members of the protected class were promoted."  See Denney, 247 F.3d at 1183 (quoting Combs, 106 F.3d at 1539 n.11).

[21] The Court notes that, with the exception of Cindy Thompson and Ronnell Johnson, the parties agreed not to present evidence of the individual qualifications of the candidates, other than their ranked category within the lists.

motivating factor in Rubin's decision to promote a black captain over Martin,

O'Neill, and Shinkle.  Accordingly, the Court finds that the jury should decide the

ultimate question: whether Martin, O'Neill, and Shinkle's race was a motivating

factor in Rubin's decision to promote the one non-white "well qualified" captain,

instead of Martin, O'Neill, or Shinkle.  See St. Mary's Honor Ctr. v. Hicks, 509

U.S. 502, 510–11 (1993) (explaining that, after the McDonnell Douglas framework

is satisfied, "the trier of fact proceeds to decide the ultimate question: whether

plaintiff has proven 'that the defendant intentionally discriminated against [him]'

because of his race" (alteration in original) (quoting Tex. Dep't of Comty. Affairs

v. Burdine, 450 U.S. 248, 253 (1981))).  Defendants' motion for judgment as a

matter of law, as to Martin's, O'Neill's, and Shinkle's claims based on the 2004

process, is denied.

> 2.    *2007 Plaintiffs*

The eighteen (18) 2007 Plaintiffs sought, but were not selected for,

promotion in the 2007 process.  Four (4) black captains, including Ronnell

Johnson, were promoted.  Under the standard enunciated in Walker and Crawford,

the 2004 Plaintiffs satisfied their prima facie burden.

With respect to Ronnell Johnson, the black captain elevated to the

"outstanding" category and promoted, Rubin testified that he elevated Johnson in

order to promote him to a specific position—a "day work" section chief in charge of managing the Fire Department's property.  Rubin stated that "no one else had expressed an interest or had any seeming desire to be in that role."  Plaintiffs have not introduced any evidence to show that Rubin's explanation of Johnson's promotion is pretextual.  See id. (explaining that, in the face of a legitimate, non-discriminatory reason for the challenged employment action, the plaintiff must prove that the stated reason is a pretext for unlawful discrimination); see also Combs, 106 F.3d at 1543 (holding that the plaintiff must "produce evidence sufficient to permit a reasonable factfinder to disbelieve [the defendant's] proffered nondiscriminatory explanation").  Based on the evidence presented, the Court finds that Plaintiffs have failed to meet their burden to demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Rubin's explanation "that a reasonable factfinder could find [it] unworthy of credence." Combs, 106 F.3d at 1538 (quoting Sheridan, 100 F.3d at 1072).

   With respect to the three (3) other promoted black captains, Rubin testified that he promoted exclusively from those ranked in the "outstanding" category and that he did not reach the "highly qualified" or "qualified" categories of the 2007 List.  The evidence shows that these black captains who were promoted were, in fact, from the "outstanding" category, and Plaintiffs have not introduced any

evidence to show that Rubin's testimony was false or his promotion basis pretextual.

Sixteen (16) of the 2007 Plaintiffs were ranked in the lower two categories, "highly qualified" or "qualified": Bearden, Bostwick, Byess, Dycus, Farmer, Hale, Hatcher, Humphreys, Martin, Rawls, Rice, Ruckstuhl, Shinkle, Terry, Webber, and Whalen.  The Court finds that these sixteen (16) Plaintiffs have failed to meet their burden to demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Rubin's explanation of his use of the "outstanding" category as the source of promoted candidates "that a reasonable factfinder could find [it] unworthy of credence."  Combs, 106 F.3d at 1538 (quoting Sheridan, 100 F.3d at 1072).  Defendants are entitled to judgment as a matter of law on these Plaintiffs' claims.

Two (2) Plaintiffs—Beckman and O'Neill—were ranked in the "outstanding," or highest category on the 2007 List.  With respect to Rubin's failure to promote these Plaintiffs, Plaintiffs do not argue that Defendants failed to present evidence of a legitimate, non-discriminatory reason for the promotions, and Defendants do not argue that Plaintiffs failed to present evidence of pretext.[22]  On

---

[22] The Court notes that, with the exception of Cindy Thompson and Ronnell Johnson, the parties agreed not to present evidence of the individual qualifications of the candidates, other than their ranked category within the lists.

the evidence presented, a reasonable jury could find that race was a motivating

factor in Rubin's decision to promote black captains over Beckman and O'Neill.

Accordingly, the Court finds that the jury should decide the ultimate question:

whether Beckman and O'Neill's race was a motivating factor in Rubin's decision

to promote the black "outstanding" captains instead of either Beckman or O'Neill.

See St. Mary's, 509 U.S. at 510–11.  Defendants' motion for judgment as a matter

of law, as to Beckman's and O'Neill's claims based on the 2007 process, is

denied.[23]

---

[23] When Defendants made their motion for judgment as a matter of law, they argued that Rubin is entitled to qualified immunity because the evidence does not support that he denied Plaintiffs a constitutional right.  In their brief, Defendants do not frame their argument in terms of qualified immunity.  The Court notes that the result reached here is the same regardless of whether Defendants' arguments are framed in the context of qualified immunity.  "Qualified immunity offers 'complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Maddox v. Stephens, No. 12-15237, 2013 WL 4437161, at *8 (11th Cir. Aug. 21, 2013) (publication pending) (quoting Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)).  Defendants do not argue that a government official's use of race in promotion decisions is not a "clearly established" constitutional and statutory violation.  See, e.g., Williams v. Consol. City of Jacksonville, 341 F.3d 1261, 1272 (11th Cir. 2003) ("In light of our precedent, . . . it was clearly established in 1999 that it was unlawful for a public official to make a race-or gender-based decision concerning hiring, termination, promotion, or transfer to or from an existing position . . . .").  Rubin is thus entitled to qualified immunity only on the claims for which Plaintiffs failed to submit sufficient evidence of a violation—the claims on which the Court has already granted Defendants judgment as a matter of law.  See id. at 1267–68.

## III.   CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion for Judgment as a

Matter of Law is **GRANTED IN PART** and **DENIED IN PART**.  It is

**GRANTED** with respect to Plaintiff Michael Beckman's claims based on the 2004

List, with respect to Plaintiff Russell E. Martin's claims based on the 2007 List,

with respect to Plaintiff Gregory L. Shinkle's claims based on the 2007 List, and

with respect to all claims asserted by the following Plaintiffs: Raymond D.

Bearden, Richard M. Bodane, William Scott Bostwick, Dennis Brown, Danny G.

Byess, Thomas C. Doyle, James Robert Dycus, Mark Wayne Farmer, Jimmy

David Gittens, Kenneth N. Hale, Douglas Hatcher, Roderick Humphreys, Ronald

V. Pagnotta, James W. Peal, Donald Pruett, James Rawls, Michael Rice, Gregg W.

Ruckstuhl, Billy J. Shoemaker, Alford Terry, Jan Peter Thiel, Robert Webber,

Scott Whalen, and Phillip Yarri.  It is **DENIED** with respect all remaining claims.

The following claims are allowed to proceed: Plaintiff Michael Beckman's claims

based on the 2007 List, Plaintiff Russell E. Martin's claims based on the 2004 List,

Plaintiff Gregory L. Shinkle's claims based on the 2004 List, and Plaintiff Daniel

F. O'Neill's claims based on the 2004 and 2007 Lists.

**SO ORDERED** this 23rd day of August, 2013.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE